HANNIBAL HAMLIN and another, trustees, in equity,

*vs.*

EUROPEAN AND NORTH AMERICAN RAILWAY COMPANY and others.

EGERTON R. BURPEE and another, in equity,

*vs.*

HANNIBAL HAMLIN and another, trustees, and others.

Penobscot.  Opinion February 4, 1881.

*Mortgage.  Railroad securities.  After-acquired property.  Collateral security.*

A mortgage of a railroad company to trustees for the security of its bond-holders of "all its right, title and interest in and to all and singular its property, real and personal, of whatsoever nature and description, now possessed or to be hereafter acquired, including its railway, equipments and appurtenances, all its rights, privileges, franchises and easements," &c. operates upon the inchoate right of the company to a conveyance of lands under contracts subsequently made as soon as the contracts are made and the company is in possession under them for the purposes of the charter. Such a mortgage will take effect upon lands subsequently contracted for or purchased to secure adequate facilities and space for engine and car houses and other railroad accommodations, to which the company at the time of the purchase had a right and expected to build their road; and such incumbrance will continue though the road is not built to such land, and the right to use them in direct connection with the road, without further legislative authority, has expired.  The case of a railroad holding more property for its own purposes than its present needs demand is entirely different from one in which the company buys other property distinct from the road or its appurtenances, not intended or necessary for the present or prospective exercise of its franchise and therefore not within the purview of the mortgage.

The mortgage attached to the right to a deed of such lands under contract and continued to attach to it as the right grew in value, whether the increased value arose from payments and improvements made by the company or by a new consolidated company which took the entire property and assumed the debts of the first company.

The interest conveyed by an assignment to secure the assignee against loss from liability as an indorser is commensurate only, in degree and duration, with the liability it secured.

BILLS IN EQUITY, heard upon bills, answers and proofs.

The first is a bill brought by the trustees of the bondholders of the European and North American Railway Company against

the company, and certain creditors (E. R. Burpee, F. A. Wilson and James W. Emery,) of the consolidated company, who had levied upon lands of the company, purchased or contracted for subsequent to the mortgage to the trustees, and called the Crosby lot in Hampden, and the Hinckley lot, Lord lot, and Lord and Veazie lot in Bangor, to restrain the defendants from disputing the title and possession of the trustees to such lots, &c.

The second is a bill by the levying creditors, who were parties defendant in the first bill, against the same trustees and the consolidated European and North American Railway Company, and others, for relief and to remove the cloud upon their title to the lands levied upon.

The following are extracts from the mortgage of the European and North American Railway Company to Hannibal Hamlin and another, trustees, dated March 1, 1869 :

" Now, therefore, the said party of the first part, in order to secure the payment of the principal and interest of said two thousand bonds, issued or to be issued as hereinbefore provided, and in consideration of the premises, and of one dollar to it paid by said parties of the second part, the receipt whereof is hereby acknowledged, has. granted, bargained, sold, conveyed, and transferred, and by these presents does grant, bargain, sell, convey and transfer unto said parties of the second part, their successor or successors in the trusts herein created .  .  .  . also, all its right, title and interest in and to, all and singular, its property, real and personal, of whatsoever nature and description, now possessed, or to be hereafter acquired : including its railway, equipments and appurtenances ; all its rights, privileges, franchises and easements ; all buildings used in connection with said railway or the business thereof, and all lands and grounds on which the same may stand or connected therewith ; also, all locomotives, tenders, cars, rolling stock, machinery, tools, implements, fuel materials, and all other equipments for the constructing, maintaining, operating, repairing and replacing the said railway or its appurtenances, or any part thereof.  .  .  . "

"To have and to hold the aforegranted premises, with all the rights, privileges, easements and appurtenances thereto belong-

ing, hereby conveyed or intended to be conveyed, to the said parties of the second part, their successors, in the trusts hereof, and their heirs and assigns, to their use and behoof, but only upon the trusts hereinafter set forth."

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"*Eighth.* It is further agreed, that the said party of the first part shall at the request of said trustees, execute and deliver such further deeds of conveyance of all the property now possessed, or to be hereafter acquired, by said party of the first part, herein conveyed or intended to be conveyed, and upon the trusts herein set forth, as may be necessary for the better security of said bonds."

Other material facts appear in the opinion.

*Charles P. Stetson* and *William L. Putnam*, for Hamlin and Hayford, trustees, cited, in addition to authorities cited by them in *Hamlin et al.* v. *Jerrard, ante* p. 62 ; *Blake* v. *Rollins*, 69 Maine, 156 ; *Emerson* v. *E. & N. A. Ry. Co.* 67 Maine, 393 ; *Coverdale* v. *Aldrich*, 19 Pick. 395 ; *Gue* v. *Tide Water Canal Co.* 24 How. 257 ; *Eldrich* v. *Smith*, 34 Vt. 484 ; *Willink* v. *Morris Canal Co.* 3 Green's Ch. 377 ; *Shamokin R. R. Co.* v. *Livermore*, 47 Pa. St. 468 ; *K. & P. R. R. Co.* v. *P. & K. R. R. Co.* 59 Maine, 22 ; *Holroyd* v. *Marshall*, 10 H. of L. Cas. 193 ; *The Key City*, 14 Wall. 653 ; *Clark* v. *Flint*, 22 Pick. 237 ; *Muer* v. *Berkshire*, 52 Mich. 149 ; *Cobb* v. *Dyer*, 69 Maine, 498 ; *Barnard* v. *N. & W. R. R. Co.* 14 N. B. R. 469 ; *Palmer* v. *Forbes*, 23 Ill. 300 ; *Buck* v. *Seymour*, 46 Conn. 156 ; *Hinckley* v. *Haines*, 69 Maine, 76 ; *Raymond* v. *Clark*, 46 Conn. 129 ; *Hooper* v. *Bourne*, 3 L. R. 2 B. D. 258 ; *Betts* v. *G. E. Ry. Co.* L. R. 3 Ex. D. 182 ; N. Y. C. & H. R. R. Co. 77 N. Y. 245 ; *Clouston* v. *Shearer*, 99 Mass. 209 ; *Gerry* v. *Stimson*, 60 Maine, 189 ; R. S., c. 51 § § 53–56 ; Jones' Railroad Securities, 416.

*James W. Emery, Woodward Emery,* and *Wilson and Woodward,* for Burpee, Emery and Wilson.

The question is between creditors,—bond-holders and judgment creditors. Equity is no more favorable to one set than the other.

The contract for purchase of the three lots of land were made with the European and North American Railway Company and assigns, in September and October, 1870.

The consolidation of the "Maine" company, and the "New Brunswick" company, took place December 1, 1872, and by § 6, of the articles of agreement, the franchises, property, and "causes in action" of the two old companies, were assigned to the "new corporation" as the consolidated company is called in the agreement, ratified by the legislature of Maine, laws of 1874, c. 609. These contracts being causes in action, were then assigned to the consolidated company, which entered into possession of the entire property at that time, to hold, own, and enjoy the same, and from that time until the attachment and seizure and sale on execution, the legal and equitable title in and to those contracts, was fully in the consolidated company. *Bath* v. *Miller*, 53 Maine, 308; *Emerson* v. *E. and N. A. R'y*, 67 Maine, 387.

Hamlin and Hayford, trustees, under the first mortgage, claim that said contracts are covered by their mortgage as "after-acquired" property, or as an "accretion" to the property originally mortgaged. We reply that upon scrutiny of the language of the mortgage, the European and North American Railway Company mortgaged its property, "now possessed or to be hereafter acquired," and by no possibility could it cover property not acquired by itself. *R. R. Co.* v. *Maine*, 6 Otto, 499; *State* v. *M. C. R. R. Co.* 66 Maine, 488; Bouvier's Law Dict. "Accretion;" *Young* v. *Northern Illinois Coal and Iron Company*, U. S. C. C. N. D. Ills. 1880; The "Reporter," March 3, 1880.

This levy was extended more than a year since, and we claim title under the levy, the proceedings being regular. *Brackett* v. *McKenney*, 55 Maine, 504.

The trustees under both said mortgages claim under their respective mortgages. It cannot be claimed that this property was covered by either mortgage. It is not essential to its business, nor is it held by the Company's trustees, now, for any legitimate railway purposes. *Seymour* v. *Canandaigua and N. F. R. R.* 25 Barb. 284; *Western Penn. C. C.* v. *Johnston*, 59

Penn. 290; *Calhoun* v. *Paducah and Memphis R. R. Co.* U. S. C. C. W. D. Tenn. April 7, 1879; "Reporter," September 24 1879.

The criterion is necessity and essentiality for railway purposes, and not what, in the opinion of a sanguine railway official, would be gratifying to him to have at hand for future use of a railway in case it increased its business and manufactured new wants. *Parish* v. *Wheeler*, 22 N. Y. 494; 1 Jones on Mortgages, § 156.

As the company never have and never can, without an additional franchise, use that property, it cannot be considered as included or embraced by the mortgages.

Counsel in an additional brief cited: *Pierce* v. *Emery*, 32 N. H. 484; R. S., of 1857, c. 51, §§ 31, 33; *Commonwealth* v. *Smith*, 10 Allen, 448; *Milw. & Minn. R. R. Co.* v. *Milw. & West. R. R. Co.* 20 Wis. 187; *Brainard* v. *Peck*, 34 Vt. 496; *Holbrook* v. *Finney*, 4 Mass. 566; *Burns* v. *Thayer*, 101 Mass. 428, and cases cited; *Brown* v. *Tyler*, 8 Gray, 135; *Smith* v. *Eastern C. Co.* 124 Mass. 154; *Noyes* v. *Rich*, 52 Maine 115; *Galveston Railroad* v. *Cowdry*. 11 Wall. 459; R. S., 1871, c. 76, §§ 29, 30; *Virginia* v. *Ches. & Ohio Canal Co.* 32 Md. 501; *Swan* v. *Patterson*, 7 Md. 164; *Brown* v. *Chesterville*, 63 Maine, 241; *Bacon* v. *Bacon*, 17 Pick. 134; *Forbes* v. *Appleton*, 5 Cush. 115; *Crompton* v. *Anthony*, 13 Allen, 33; *Barry* v. *Abbot*, 100 Mass. 396; *Anthracite Ins. Co* v. *Sears*, 109 Mass. 384; *Powell* v. *North Miss. R. Co.* 40 Mo. 63; *Racine & Miss. R. Co.* v. *Farmers' Loan & T. Co.* 49 Ill. 331; *Selma, Roam & D. R. Co.* v. *Harbin*, 40 Geo. 706; *McMahan* v. *Morrison et als.* 16 Ind. 172; *State* v. *Bailey*, Id. 51; *Paine et als.* v. *Lake E. & L. R. Co.* 31 Ind. 283; *Lauman* v. *Lebanon Valley, R. Co.* 30 Penn. St. 42; *Tagari et al.* v. *Northern R. R. Co.* 29 Mary. 559; *N. J. Midland C. Co.* v. *Strait*, 35 N. J. Law, 325; *Ohio* v. *Sherman*, 22 Ohio, 428; *Clearwater* v. *Meridith*, 1 Wall. 25; *Shields* v. *Ohio*, 26 Ohio, 86; *Shaw* v. *Norfolk Co. R. Co.* 16 Gray, 407; *Shields* v. *Ohio*, 95 U. S. 319; *Seymour* v. *Canandaigua & Niagara Falls R. R. Co.* 25 Barb. 284; *Walsh* v. *Barton*, 24 Ohio St. 28; *Shamokin Valley R. R. Co.* v. *Livermore*, 47 Pa. St. 465;

*Farmers' Loan and Trust Co.* v. *Commercial Bank*, 11 Wis. 207; *Same* v. *Cary*, 13 Wis. 110; *Same* v. *Commercial Bank of Racine*, 15 Wis. 424; *Dinsmore* v. *Racine & Mil. R. R. Co.* 12 Wis. 649; *Meyer* v. *Johnson*, 53 Ala. 237; *State* v. *Commissioners of Mansfield*, 3 Zab. (23 N. J. Law), 510.

*Henry W. Paine* and *Barker, Vose and Barker*, for Edward Cushing, furnished very able briefs, contending that the title to the lands in question, was in Cushing as trustee of the consolidated European and North American Railway Company. See their brief in the preceding case.

SYMONDS, J.   The three parcels of real estate in Bangor referred to as the Hinckley, Lord, and Lord and Veazie lots, the European and North American Railway Company, in the fall of 1870, contracted in writing to purchase. Possession was then taken by the corporation, and has been retained by those in charge of the railroad from that time to the present. The payments required by the contracts were made by that company, and afterwards by the consolidated company, and by the trustees under each mortgage during the period of their possession. The premises have been used and improved at considerable expense for depot grounds; the principal improvements having been made before consolidation.

The contracts were assigned by the European and North American Railway Company, September 12, 1870, to Jewett, Woods and Emery, to secure them against liability as indorsers on the first three of the notes given in each instance for the purchase money. But those notes were paid at maturity, the liability of the indorsers was at an end, and their right to hold the collateral ceased. The assignment had served its purpose. The interest it conveyed was commensurate only, in degree and in duration, with the liability it secured.

The course of reasoning employed in the previous case, *Hamlin et al. Trustees,* v. *Jerrard,* leads directly to the conclusion, that the mortgage to the complainants in the first of these bills in equity, as trustees, operated upon the inchoate right of the

Maine company to a conveyance of these lots under the contracts, as soon as they were executed and that company was in possession under them for the purposes of the charter. Their right to a conveyance, became at once subject in equity to the mortgage. The mortgagees, upon possession taken, were subrogated to the rights of the mortgagors. By our statute, such a right to the conveyance of lands, may be taken and sold on execution. R. S., c. 76, § 29. Such a mortgage may apply to it as well. At the date of a mortgage like this, given to obtain funds to complete construction, the corporation might be in possession of considerable portions of its road-bed under similar contracts to purchase; or it might subsequently acquire title to parts of its line in that way, instead of pursuing the statutory method. In either case, such after-acquired property, when in pursuance and upon performance of the contract the full title to it vests in the corporation, becomes part of a mortgaged estate. Any intermediate interest or right gained, is equally subject to the mortgage. The manner of acquiring the right of way, or depot grounds, cannot be important. It is upon the right acquired that the mortgage acts. Possession of lands under such circumstances and for such purposes, with the right on certain terms to perfect the title, may be as valuable an incident to the railroad itself, as necessary a part of it, as any lease-hold interest or higher estate it may have in another part of its line. See *Barnard* v. *Norwich and Worcester Railroad*, *supra*, where an after-acquired lease-hold interest was held to pass to the trustees under the mortgage.

Nor do we think a different rule applies, as to the payments made by the consolidated company upon these contracts during the period of its possession. Such payments stand upon the same footing as improvements made by that company upon the buildings and grounds. Its position, in reference to the plaintiffs as trustees and to the mortgaged property, is in some respects more truly defined by saying that it *is* its predecessor in title under a new name (and something more), than by regarding it merely as the assignee of the original company. It took the entire property, subject to incumbrances, and assuming the debts.

Five millions of the consolidated bonds were to be used only to redeem and pay the first mortgage claims. If the exchange of bonds had been completed, the whole consolidated property, with all future additions, would still have been incumbered by substantially the same debt as that secured by the plaintiffs' mortgage, under a new form, and in its own name. If, at the date of consolidation, the Maine company had obtained a clear title to the depot grounds in Bangor, but was in debt for them, had received the deed, but had not paid the purchase money, it is clear that the grounds would have been subject to the plaintiffs' mortgage, while the debt would have been one the consolidated company must pay. Or, if there had been a mortgage on the same real estate when the Maine company received its deed, supposing for the sake of illustration the deed to have been delivered and under such circumstances, and consolidated funds had paid it, the payment would have been of a debt it was the duty of that company to pay, that mortgage would have been discharged, and the plaintiffs' mortgage would have become the first incumbrance upon the land. The mortgage to the plaintiffs attached to the right to a deed of the station-grounds as a part of the road itself, and it continued to attach to it as the right grew in value. The consolidated company, under the articles of union, was not an assignee of these contracts, discharged from the mortgage. The increased value of the right to a conveyance of real estate, which was in the occupation of the company and essential to the road, remained subject to the mortgage as an accession to the road, just as the increase of values along any part of the line, arising from improvements made by the consolidated company in its roadbed, track, or stations, added to the security of the first mortgage bondholders. If the consolidated company, taking the entire property of its predecessor in Maine, subject to mortgage, increased the value of the railroad, and the rights that go with it, by making payments or expending money, that gives it no equitable interest as against the mortgagees. If, at the consolidation, the title of the Maine company to a part of its road-way or yards was imperfect, and payments by the consolidated company perfected it, the mortgage holds the completed title. In

regard to these three contracts for the real estate at the station in Bangor, it should be observed, also, that the interest in them which passed to the consolidated company at the consolidation, not only was subject to the mortgage in the sense already indicated, but it was also in its essence, a right, and nothing more, to acquire a thing, which, when acquired, as to these plaintiffs, was a part of the road mortgaged to them.

It is not doubted, that an interest in these contracts passed to the consolidated company by the terms of the articles of union. It would be to that company that the conveyances should be made, when the terms were fulfilled on which the contractors were obliged to give the deeds, unless a legal foreclosure of the plaintiffs' mortgage had changed their interest as mortgagees into an absolute title. But a conveyance to the consolidated company, prior to foreclosure, would inure to the benefit of the plaintiffs, to the extent of their mortgage.

The Crosby lots were purchased and paid for by the European and North American Railway company, and the deed was delivered to them, before consolidation. The object of the purchase was to secure adequate terminal facilities and space for engine and car houses, and other railroad accommodations. The road was located to and upon them, but was built only to within about four hundred and seventy yards, and the time for building under the charter, has expired. For all that appears, they were bought in good faith, in the exercise of the best judgment of the officers then, and for railroad purposes, at a time when the company had a right and expected to build to them. The mortgage took effect upon them. That the expectations of business have not been realized, that the right to use them in direct connection with the road, without further legislative authority, has expired, does not relieve them from the incumbrance. They are claimed still, on grounds that the evidence would scarcely enable us to deny, to be necessary for the future development of the railroad. We could not say from the testimony, that the purchase was, at the time, an extravagant and unreasonable one. The case of a railroad holding more property for its own purposes than its present needs demand, is entirely different from one in which the company buys

other property, distinct from the road and its appurtenances, not intended or necessary for the present or prospective exercise of its franchise, and therefore not within the purview of the mortgage. We think there is nothing in the case to exclude the Crosby lots, or any part of the three lots in Bangor, from the effect of the mortgage, as property not therein intended to be acquired and conveyed.

The complainants in the first bill are entitled to an injunction against all the respondents named therein and in the amendment, restraining them from any interference with the complainants' possession and control, as mortgagees, of the real estate therein described, and from any resistance of the complainants' title to the same, to the extent of the trusts declared in the mortgage; the injunction to be made perpetual and without the limitation just stated, if the interest and title of the complainants has or shall become absolute by a legal foreclosure. The second bill is dismissed.

*Decree accordingly.*

APPLETON, C. J., VIRGIN, PETERS and LIBBEY, JJ., concurred. WALTON and BARROWS, JJ., did not sit.